UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOSEPH R. JOHNSON,              )
                                )
        Plaintiff               )
                                )
v.                              )   No. 1:13-cv-297-JDL
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security, )
                                )
        Defendant               )

**REPORT AND RECOMMENDED DECISION**[1]

This Child's Disability Benefits ("CDB") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.[2] The plaintiff seeks remand on the bases that the administrative law judge impermissibly construed raw medical evidence in determining his mental residual functional capacity ("RFC"), failed to include an appropriate limitation for concentration, persistence, or pace, and made a deficient credibility finding. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 13, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] To be entitled to Child's Disability Benefits on the earnings record of a wage earner, a claimant must demonstrate that he or she is the insured person's child, is dependent on the insured, is unmarried, and, if over age 18 and not eligible for benefits as a full-time student, has a disability that began before age 22. *See* 20 C.F.R. § 404.350; *see also, e.g., Starcevic v. Commissioner of Soc. Sec.,* No. 08–13128, 2009 WL 2222631, at *6 (E.D. Mich. July 22, 2009) (claimant applying for child's disability benefits must demonstrate that she was disabled before she turned 22 "and was continuously disabled from the date of her twenty-second birthday through the date that she applied for benefits").

1

("Statement of Errors") (ECF No. 13) at 2-6. For the reasons that follow, I recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had not attained age 22 as of January 1, 2003, his alleged onset date of disability, Finding 1, Record at 17; that he had severe impairments of depression, attention deficit hyperactivity disorder, post-traumatic stress disorder, conduct disorder, and polysubstance abuse in early remission, Finding 3, *id.*; that he retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could understand, remember, and carry out simple one- to six-step instructions and persist at that level of complexity for eight hours a day, five days a week, would need to avoid work with the general public, could have occasional contact with supervisors and co-workers for non-collaborative work, and would require jobs that involved no more than occasional decision-making and occasional changes in the work setting, Finding 5, *id.* at 19; that, considering his age (a younger individual, born on July 31, 1989), education (at least high school), work experience (no past relevant work), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 21; and that he, therefore, was not disabled from January 1, 2003, his alleged onset date of disability, through the date of the decision, February 15, 2012, Finding 11, *id.* at 22. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary*

of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Mental RFC Determination

The record contained two expert mental RFC opinions, those of nonexamining agency consultants David R. Houston, Ph.D., dated October 8, 2009, and Brian Stahl, Ph.D., dated April 5, 2010. *See* Record at 330-42, 408-20. Both Drs. Houston and Stahl deemed the plaintiff's mental impairments nonsevere, causing only mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, with either no episodes of decompensation or insufficient evidence of such episodes. *See id*. at 330, 340, 408, 418. The administrative law judge gave those opinions "[l]ittle weight[,] . . . as the medical evidence establishes that the [plaintiff's] work capacity is somewhat limited by psychological symptoms." *Id*. at 21. She found that, with or without the effects of substance abuse, the plaintiff had mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate

3

difficulties in concentration, persistence, or pace, and had experienced one to two episodes of decompensation. *See id*. at 18. She explained, in relevant part:

> Although the [plaintiff] has a history of aggressive, oppositional and criminal behavior, he stated in July 2009 that he has "many friends," makes friends "easily," and has no history of difficulties at work. Clinicians have often noted that he presented as calm, friendly, easily engaged and polite. There is no persuasive evidence that [he] is markedly impaired with respect to concentration[,] persistence[,] or pace. Mental status observations have not revealed him to be unable to concentrate adequately, and he reported in October 2011 that methylphenidate was effective in improving his focus and attention span, and enabled him to finish projects.

*Id*. (citations omitted).

The administrative law judge then went on to make the mental RFC finding that the plaintiff challenges. *See id*. at 19-21. In that context, she discussed at some length why she discredited the plaintiff's claim of a disabling level of symptoms. *See id*. at 20. However, she did not explain how or why she assessed the specific restrictions set forth in her RFC determination. *See id*. at 19-21.

The plaintiff correctly observes that, in so doing, the administrative law judge exceeded the bounds of her competence as a layperson. *See* Statement of Errors at 3; *see also, e.g., Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record.").

Yet, in response, the commissioner correctly notes that this court has held such errors harmless when an RFC finding is more favorable to a claimant than the medical evidence supports. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 2-5; *see also, e.g., Gonsalves v. Astrue*, Civil No. 09-181-BW, 2010 WL 1935753, at *6 (D. Me.

May 10, 2010) (rec. dec., *aff'd* June 16, 2010) (in circumstances in which the only two expert opinions of record found no physical limitations, administrative law judge's error in assessing physical RFC without any analysis of the medical evidence supporting a limitation to light work could "only be read, given the state of the record, to be favorable to the [claimant], assigning him a more restricted residual physical capacity than, as the [claimant] himself points out, is justified by the medical evidence"); *see also Gould v. Astrue*, No. 2:11-cv-265-JAW, 2012 WL 1098471, at *4 (D. Me. Mar. 31, 2012) (rec. dec., *aff'd* Apr. 18, 2012) (in circumstances in which two agency nonexamining consultants found no severe mental impairment and claimant did not separately challenge the rejection of treating source's mental RFC opinion, administrative law judge's error in assessing mental RFC unsupported by expert opinion was harmless in that it was "more favorable than the record supports").

At oral argument, the plaintiff's counsel disputed that this is a case in which the RFC finding is more favorable than the medical evidence supports. He noted that records postdating the Houston and Stahl opinions contain Global Assessment of Functioning, or "GAF," scores in very low ranges.[3] He pointed, in particular, to the last medical record in the file, dated December, 20, 2011, in which Mary Petrini, LCPC-C, assessed the plaintiff with a GAF score of 35. *See* Record at 619.[4] He observed that this court has found the existence of GAF scores in the 41 to 50 range, not considered by state agency consultants, sufficient to show that an error is not harmless.

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM–IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34.

[4] A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 34 (boldface omitted).

5

*See* Statement of Errors at 4 (citing *Plourde v. Colvin*, No. 1:12-cv-194-JAW, 2013 WL 1345519 (D. Me. Mar. 14, 2013) (rec. dec., *aff'd* Apr. 2, 2013); *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011)).[5]

Counsel for the commissioner rejoined, as had the commissioner in her opposing brief, that Drs. Houston and Stahl reviewed five years' worth of records, including some assessing GAF scores in the same low range, yet deemed the plaintiff's mental impairments nonsevere. *See* Opposition at 3 & n.1, 5 (taking the position that the content of medical records unreviewed by Drs. Stahl and Houston was not substantially different from those they did review). He pointed out that, in any event, a GAF score, standing alone, has limited significance. *See also id*. at 4-5; *LaFontaine v. Astrue*, No. 1:10-cv-527-JAW, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011) (rec. dec., *aff'd* Oct. 13, 2011) ("A GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions.").

I agree with the commissioner that the 2011 GAF score to which the plaintiff points is cumulative of GAF scores reflected in materials that Drs. Houston and Stahl reviewed. For example, Dr. Stahl noted that the plaintiff was assigned a GAF score of 40 on August 3, 2009, *see* Record at 292, 420, and summarized a July 31, 2008, Crisis Assessment note that contains a GAF score of 41, *see* Record at 420, 480. In explaining that he deemed the plaintiff's mental impairments nonsevere, he noted, "Recent mental status notes indicate good functioning." *Id*. at 420. Petrini evidently did not perform a mental status examination; that portion of her intake assessment form is blank. *See id*. at 614-17. A mental status examination performed by Larry Sexton, PMHNP-BC, on November 17, 2011, was essentially normal. *See id*. at 602-04.

---

[5] A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34 (boldface omitted).

In the circumstances, the opinions of Drs. Houston and Stahl, the only medical expert opinions of record as to the severity of the plaintiff's mental impairments, remain substantial evidence that those impairments were nonsevere. *See Brackett*, 2010 WL 5467254, at *5 ("The teaching of the caselaw cited by both sides is that there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC. Factors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge.") (citations omitted).[6]

Accordingly, as in *Gonsalves* and *Gould*, the administrative law judge reached an RFC determination more favorable than the medical evidence supported, rendering her error in assessing a mental RFC from the raw medical evidence harmless.

### B. Moderate Concentration Difficulties

The plaintiff next faults the administrative law judge for failing to reflect the moderate restriction that she found in concentration, persistence, or pace in her determination of his mental RFC. *See* Statement of Errors at 4-5. He argues that the assessed limitation to "simple" work with up to six-step instructions is internally inconsistent and, in any event, a limitation to unskilled work

---

[6] By contrast, in *Plourde* and *Brackett*, on which the plaintiff relies, *see* Statement of Errors at 4, the court held that administrative law judges erroneously relied on agency consultants' opinions that claimants' mental impairments were nonsevere when evidence postdating those opinions called the consultants' conclusions into question. *See Plourde*, 2013 WL 1345519, at *4 ("No agency expert examined the [claimant] following her suicide attempt or examined the records generated during or subsequent to that attempt, and no psychological or psychiatric expert was called to testify at her hearing."); *Brackett*, 2010 WL 5467254, at *6 (evidence unseen by agency consultant included new diagnoses of bipolar disorder and post-traumatic stress disorder and the assessment of a significantly lower GAF score). In that context, this court found that the claimants met their burden of demonstrating that the error was not harmless when they pointed to GAF scores ranging from 45 to 50, consistent with serious occupational impairment. *See Plourde*, 2013 WL 1345519, at *6; *Brackett*, 2010 WL 5467254, at *6-*7.

does not necessarily account for a moderate limitation in concentration, persistence, or pace. *See id*.

As the commissioner correctly notes, *see* Opposition at 5-6, the error in assessing an internally inconsistent limitation is rendered harmless by virtue of the administrative law judge's reliance, at step 5, on two jobs that qualify as "simple:" harvest worker/fruit, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 403.687-018, and garbage collector, DOT § 955.687-022, *see* Record at 21. Both jobs have a General Educational Development, or GED, reasoning level of 1, which requires workers to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." DOT §§ 403.687-018, 955.687-022. *See also Conley v. Astrue*, No. 2:10-cv-303-DBH, 2011 WL 4571870, at *2-*3 (D. Me. Sept. 29, 2011) (rec. dec., *aff'd* Oct. 18, 2011) (error in deeming claimant limited to four-step instructions, rather than simple, repetitive tasks, harmless when vocational expert identified job with GED level of 1, which corresponds to simple tasks).

To the extent that that the plaintiff argues that the limitation is inappropriate because it is unsupported by expert opinion, *see* Statement of Errors at 4 (citing *Conley*, 2011 WL 4571870, at *4) (remanding case in the absence of medical support for translation of a moderate limitation on concentration, persistence, or pace to a limitation to four-step instructions), that is a variation on the theme of his first point of error. As counsel for the commissioner suggested at oral argument, it is harmless for the same reason: that the finding of severe mental impairments imposing certain restrictions is more favorable to the plaintiff than the medical evidence supports.

Finally, as the commissioner argues, *see* Opposition at 6-7, to the extent that the plaintiff cites *Maldonado v. Astrue*, Civil No. 08-412-B-W, 2009 WL 1885057, at *5-*6 (D. Me. June 30, 2009) (rec. dec., *aff'd* July 23, 2009), for the proposition that a moderate limitation in concentration

8

can affect even unskilled work, *see* Statement of Errors at 5, *Maldonado* is distinguishable. "In *Maldonado*, the administrative law judge essentially equated unskilled jobs and a moderate limitation in concentration, persistence, and pace[.]" *Davis v. Astrue*, No. 1:10-cv-90-JAW, 2010 WL 5395048, at *3 (D. Me. Dec. 22, 2010) (rec. dec., *aff'd* Jan. 12, 2011). By contrast, in *Davis*, the administrative law judge limited the claimant to "unskilled, routine, repetitive tasks, and within this context she can maintain concentration, attention, focus, persistence and pace[.]" *Id*. at *3 (citation and internal quotation marks omitted). This court distinguished the *Davis* formulation from that at issue in *Maldonado* in that, instead of equating a moderate limitation in concentration, persistence, or pace with unskilled work, "the administrative law judge used the limitation to modify the universe of unskilled jobs." *Id*.

The commissioner correctly notes, *see* Opposition at 7, that, in this case, as in *Davis*, the administrative law judge did not merely equate a moderate limitation in concentration, persistence, or pace with unskilled work but, rather, modified the universe of unskilled work, limiting the plaintiff to understanding, remembering, and carrying out simple one- to six-step instructions and persisting at that level of complexity for eight hours a day, five days a week, *see* Finding 5, Record at 19.

The plaintiff, thus, falls short of demonstrating reversible error with respect to the assessment of limitations in concentration.

### C. Credibility Finding

Finally, the administrative law judge found the plaintiff's allegations not credible to the extent inconsistent with the assessed RFC. *See id.* at 19-20. She explained that "[o]bservations of the [plaintiff's] mental status by treating and examining sources, as well as his own statements regarding his condition, are inconsistent with a finding that he is disabled from all work." *Id*. at

9

20. She provided numerous examples from treatment records spanning the period from November 2005 to November 2011, noting, for example, that in November 2005, a psychiatrist found no abnormalities in the plaintiff's speech, thought, or behavior, and the plaintiff described his mood as "fine," and in November 2011, the plaintiff reported that his medications were helpful and that he had a new girlfriend, his mental status was observed to be normal, and he said he was feeling well "overall." *Id*. (citations and internal quotation marks omitted).

She stated that "evidence that factors other than the [plaintiff's] impairments prevent him from obtaining employment also detracts from his allegation of disability." *Id*. She observed that 2009 and 2010 records reflected that the plaintiff had lost jobs or had difficulty obtaining them due to transportation problems, and that he noted in December 2009 that he was willing to work but that finding a job was a barrier to his employment. *See id*.

The plaintiff complains that the administrative law judge took isolated statements in his records out of context; for example, ignoring portions of the November 2005 report indicating that he would "need to be observed closely in the milieu during periods of stress, which appear to be the times that he obviously will harm himself[,]" his prognosis was guarded, and much depended on his ability to gain benefit from the structure, consistency, and predictability that KidsPeace provided. Statement of Errors at 5-6 (quoting Record at 277-78). He adds that the administrative law judge ignored a Crisis Assessment in the file as well as his history of cutting himself, referenced as recently as August 2011. *See id*. at 6 (citing Record at 505-10, 581-87). He argues that statements about practical problems such as transportation are not probative, particularly in a young man, of his ability to work on a full-time, sustained basis, and none of the records mentioned by the administrative law judge contradicts his concentration deficit. *See id*.

As the commissioner counters, however, *see* Opposition at 8-9, statements by the plaintiff that he was doing "fine," or words to that effect, and normal or relatively normal findings on mental status examination can be found throughout the record, *see, e.g.*, Record at 276, 294, 344, 346, 364, 374-75, 504, 534-37, 555-59, 562-65. While, as the plaintiff points out, *see* Statement of Errors at 6, the evidence to this effect is not monolithic, the administrative law judge reasonably determined that this evidence, taken as a whole, weighed against giving full credence to his complaints of disabling mental restrictions, *see, e.g.*, 20 C.F.R. 404.1529(c)(2), 416.939(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work.").

The administrative law judge likewise reasonably deemed evidence that the plaintiff had lost jobs, or was prevented from obtaining them, due to transportation issues inconsistent with his complaints of disabling mental limitations.

Her credibility determination, accordingly, is entitled to deference. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for***

*which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of July, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge